We'll move to argument next in number 20, 35, 37, United States v. Bhaskar Ms. Kunstler, whenever you are ready Good morning, thank you. May it please the court, my name is Sarah Kunstler and I represent the appellant Sachin Bhaskar. Your honors, in response to the national emergency created by the COVID-19 pandemic, the CARES Act authorizes remote sentencing when three predicate conditions have been met. When the hearings cannot be conducted in person without seriously jeopardizing public health and safety, when the district judge in a particular case finds, for specific reasons, that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice, and three, upon consent of the defendant after consultation with counsel. Here, the district court failed to make the requisite specific findings, and Mr. Bhaskar's consent was neither knowing nor voluntary. For these reasons, the district court Well, the district court did issue this order, the order regarding use of video or teleconferencing for felony pleas and or sentencing, right, which reads, The proceedings to be held today cannot be further delayed without serious harm to the interests of justice for the following specific reasons. The defendant's interest in finality and the public interest in health, safety, and an efficient resolution to this matter outweigh any harm that could result from proceeding by videoconference. Why was that insufficient? Well, I mean, the question for this court is what level of specificity is required. Our argument is if that was sufficient, the CARES Act really has no meaning, and every case would qualify for remote sentencing. And here, in this particular case Well, is it always the case that the defendant's interest in finality and so on outweighs any harm? I mean, wouldn't, shouldn't we credit the district court that the district court paid attention to that specific case and balanced those factors? Well, I mean, here, the appellant had asked for, made three requests for adjournments. On no uncertain terms, the court said this adjournment will be the final adjournment. There was no, the council The district court did say that in no uncertain terms, but then, in fact, did give another adjournment, right? Yes, and then that one, too, in even stronger terms, said this is the final adjournment. And council expressed the clear desire to be there in person, to meet with their client in person prior to sentencing. The district court was willing to do a sentencing in person, correct? Yes, and I can speak to that. And that really goes more to the consent issue. And it's not I mean, it goes to the other issue as well. Because so much time was passing that it was just not a good thing to keep delaying this. It really wasn't a lot of time. The defendant pled guilty in March, and here we are in October. The defendant was facing a ten-year mandatory minimum sentence. We have only seven months past, and we are at the beginning of a global nationwide pandemic where many sentences are being delayed. So there's We didn't know at that point that it was the beginning of what would turn out to be a multi-year situation. Yes, but it was unprecedented, and exigencies did exist. And we have Your argument is that the district court did not make adequate findings that the case could not be further delayed? Is that the argument? Part of my argument is that the district court did not make adequate findings. And that in requiring specific reasons for a particular case, that more specific reasons are required. They certainly are required at sentencing when a judge is justifying the sentence it imposed. This court requests individualized specific findings. So instead of entering an order that says the defendant's interest in finality outweigh any harm that could result from proceeding by video conference, if the district court had said the defendant's interest in finality because this case has been pending for such amount of time and it's dragging on for such amount of time, therefore it outweighs any harm from proceeding by video conference, would that have been sufficient? Some level of specificity is required that makes it specific to this particular case. There's nothing here that doesn't apply in general to any case during COVID when a sentencing might be delayed. But again, there might be cases where the interest in finality does not, in fact, outweigh the harm, right? I mean, a district court could make a determination that actually it hasn't been pending for that long or for some reason appearing by video conference would be especially problematic because appearing in person is more important in the circumstances of that particular case. So why are you saying that these reasons apply every time? I mean, it isn't balancing, right? Here the appellant had expressed no interest in finality, had not requested that the sentence had gone ahead, and a significant amount of time hadn't passed. And I do, Your Honors, want to see- I'm looking at the order that the district judge issued. And it said the proceedings to be held today cannot be further delayed without serious harm to the interests of justice, the defendant's interest in finality, the public interest in health, safety, and an efficient resolution to this matter outweigh any harm that could result from proceeding by video conference. Why is that not sufficient? Those are generalized terms that actually don't apply to this case. It's an incantation. These are the magic words to delay a sentence, but they're not individualized, and they're not- In view of the fact that the defendant consented to proceed in this fashion, did not object, am I correct that plain error is the standard? We argue that plain error is not the standard because absence of- Why is it not? Because absence at a sentencing proceeding is a structural error. And when the court looks to the Supreme Court's decision in Weaver when it comes to errors of this nature, they are per se prejudicial. Now, I do want to turn to consent, Your Honors, because this is a case where- But you're saying that any defect, no matter how tiny, in a sentencing proceeding is structural error? No, but a defendant- Why is this- What authority do you have for the proposition that this is structural error? Because this is about a defendant's ability to be present at his sentencing. It strikes to the heart of the adversarial process. Presence at one's sentencing and at every aspect of their trial and the case against them is structural. Those are the types of errors considered under Weaver to be structural errors. Yeah, but you're saying- So I guess this will move on to the issue of consent. But you're saying his ability to appear in person, but he was still able to. So regardless of the district court's findings about the interest in finality, the district court also did give him the opportunity to say he wants to appear in person, right? Well, if you look at the record of this case, first the rule requires upon consent of the defendant after consultation with counsel. Here, the defendant was not provided with an opportunity to speak to his counsel prior to being asked to give his consent. Well, that's the consent that he gave at the sentencing proceeding to confirm that he had given consent. But the order scheduling the proceeding said if defendant elects not to consent to proceed by videoconference, the sentencing will take place in person in the Robert H. Jackson United States Courthouse, and all counsel will be required to attend. So months before the sentencing proceeding, the district court had issued an order saying he could elect not to consent to proceed by videoconference, right? In which case it would happen in person. But when you look at, but we also know that this defendant was not able to meet with his counsel at any point once during that time. Because counsel wrote several letters saying we can't get there, we're in a vulnerable age group, we have cancer, we can't meet with our client. Please put off this sentence so we can meet with our client. And the sentence went forward. So there was no, that may have been posted to the docket. The district court is providing all of these reschedulings of the sentencing proceeding. Did counsel ever say we have been unable to meet with our counsel all of this time, including the very last reschedule and we just have no opportunity? It was the basis for a number of the requests was the inability to meet with their client. And in fact, at the time of the sentence, it was still not physically safe for them to be present outside in the Western District of New York. So they didn't communicate with their client at all throughout all of these multiple continuances? That's outside of this record. But what is on this record- So that's the point. But what they did say on this record is that the calls that we're having are not sufficient, that we're unable to communicate with him, that the technology isn't sufficient, that we can't talk to him. We're unable to go over the materials to them. That is part of the record. That was at the adjournment they requested a month before they appear in court. And here they are in court at the height of the pandemic. And they're still not in person, having expressed these concerns to the court. But beyond that, if you look at the record of the proceeding, here in the Southern District during COVID, when we had defendants appearing remotely, I'm on the Southern District panel. And what we would do is we would be asked to have our client fill out a form, which expressed that they understood what they were consenting to and what rights they were giving up. And we signed it, too, and that was submitted. That doesn't exist here in the Western District. I understand that's not required, but it's nonetheless useful. Here what we have, if you look at the record, is the court asks Mr. Baskar, he says to Mr. Baskar, do you understand that we could, or he doesn't even say do you understand. He says, you know, we could delay this if the defendant demanded it. He doesn't address that to Mr. Baskar. Then the court shifts focus and starts talking with Mr. Baskar's attorneys about which one of them is going to speak and how the hearing is going to work procedurally. Then the court turns back to Mr. Baskar and says, are you okay with Zoom? And are you doing this voluntarily? And at that point, the first opportunity for the appellant to speak- There was a breakout session. After that. Well, but they had a chance to talk. It doesn't indicate how long, but on page 299, there was a confidential breakout session. And then the sentencing proceeding resumed. That was for the purposes of reviewing the PSR, and it was after consent is elicited. And after the court asks appellant, is he doing it voluntarily? The appellant responded, you were talking to me? I couldn't hear that. Hello. And that is what the appellant says. Well, then the court says, did you hear what I asked? Did you hear the question? The defendant says, can you please repeat the question? And the court says, sure. The question is, are you voluntarily consenting to go forward with sentencing remotely using the Zoom platform? And the defendant says, yes. I understand that. But it does not include what the judge said before, which is you have the right not to consent to this. You can demand to appear. That piece of what the judge told the appellant- But the question says, are you consenting to do this? Doesn't that imply that you might not be? Well, I mean, it's a very- It's a very sparse exchange that occurs without the assistance of counsel, and it's particularly concerning, given that appellant is a foreign national and non-native speaker with no prior contact with the criminal justice system who's appearing, who's looking at a tiny screen from a cell at a judge. You know, it's one yes after he's voluntarily consenting to go forward with sentencing remotely using the Zoom platform. Correct, because then she says, you know, you haven't taken any medication or alcohol or anything just to make sure that he's in his right mind, right? So there is a follow-up question as well. Yes. Right, so it's not just saying yes. It's making sure that he's giving an informed answer. It's a very limited exchange, and it provides no context. It doesn't tell him that he has an ability to say no. He was not given an opportunity to discuss it with his lawyer. And, you know, it's ‑‑ and he's here after three adjournments. I understand the court is saying that you have the right to postpone this, but when a judge issues an order saying under no circumstances can you postpone this and then says in court you have the right to postpone this, it's ‑‑ the question, you know, is that a real question and is that a real request for consent? I understand that. Can I ask about the comparator cases that you provide, about the other comparable cases that receive much lower sentences? How does that fit into a substantive reasonableness challenge? Are you saying that in light of those other cases this sentence was shockingly high? Is that the argument? Well, I think part of it is, you know, looking at that a sentence that's within the guidelines is not necessarily substantively reasonable, that there's a ‑‑ and the heartland of sentences in these cases falls into this area, right? And then you look at here's a sentence where there was a wide range of sentencing possibilities. Well, the comparator cases, I mean, your argument is that the conduct is actually more offensive or more culpable. Yes. But the guidelines calculation still didn't require a higher sentence. So you don't challenge Mr. Baxar's guidelines calculation, do you? I don't challenge the guidelines calculation. Right, so the guidelines calculation did call for a higher sentence than these other cases. So I guess my question is what was the district court supposed to do? Say even though the guidelines calculation here required or called for life in prison, right? I'm not, you know, I'm not certain that's accurate that the guidelines calculations in those cases called for a lower sentence, and that's not something I'm prepared to concede. Well, the guidelines, the actual ‑‑ I mean, I have here an appendix, right? I mean, it gives the level of the guidelines for each of these sentence defendants, and they are 31, 35, 27, 31, 33, 34, right? Mr. Baxar was what, 41? Right, so his guidelines calculation, his guidelines number was higher. Yes. So I guess that's my question. So he got ‑‑ he had a higher guidelines recommended sentence and got a higher sentence than these people who had lower numbers. So what was the district court supposed to do with the comparators, I guess, is my question. Well, I mean, it's not just the guidelines calculations. I think the focus of Mr. Baxar's defense counsel at that time was looking at the conduct, the relative conduct in those cases versus this case, that these were, even in the most egregious of these cases, these were people in positions of authority. These were people in possession of pornography. These were people who had used violence or threats of violence. And yet, even with these factors, the highest sentencing range was 144 to 168 months. And I think looking at the conduct here, the question is whether the sentence here was greater than necessary to achieve the goals of sentencing or whether, you know, and whether it was inconsistent with the parsimony clause. And here we have a court that's anchoring its sentence in its determination of Mr. Baxar's remorse, that it wasn't genuine, that it was replete with excuses. And that is, it feels very unfair when the courts only experience that person. It's not the first face-to-face sentencing that our Constitution contemplates, but is looking at the defendant and experiencing the defendant's words, demeanor, appearance, remorse on a tiny video screen. Okay. I think we have that argument. You've reserved time for it, but also we'll hear from you again. But let's hear from the government, Ms. Lee. Thank you. Thank you. Good morning. May it please the court, my name is Tiffany Lee and I represent the United States. I want to turn first to the statement that counsel made that there was no opportunity to discuss the possibility of consenting to the proceedings, proceeding remotely, when actually on appendix page 295, and Judge Manasci, you had read the first part when he's talking about consent, voluntarily consenting to go forward with sentencing remotely. Later on, down that same page, the court talks to, speaks with one of Mr. Baxar's attorneys and says, okay, with respect to proceeding by Zoom, I do find that there is voluntariness here. Counsel had discussed this with Mr. Baxar. If that's not accurate, let me know. Mr. Patel, has that discussion taken place? Mr. Patel says yes. So, you know, I think the notion that Mr. Baxar was in radio silence mode from the time of his plea until the time of sentencing with his attorneys is not accurate. He did have the opportunity to confer with counsel. Counsel had multiple adjournments, was provided with multiple adjournments, submitted a voluminous submission, sentencing submission, that included a lot of materials for the district court to review, and the district court did review it. And so, given all the circumstances, with respect to Mr. Baxar's consent, it's the government's submission that what we have here is a knowing and voluntary consent, and that the district court did make findings, as required by the CARES Act, in order to make that discretionary determination at the end of the day. What about the argument that these are generic findings? I mean, it does look like, I mean, it is a checkbox form, right? So, did the district court make specific findings that, in this case, the defendant's interest in finality outweighed the harm that could result from proceeding by video conference? Well, the CARES Act doesn't say specifically the types of findings, but it does- Well, it does say specific reasons, right? The district court has to find for specific reasons. Doesn't that mean that the Congress is saying it can't just be a general blanket finding that applies to all cases? That may be so, but the factors are the same in terms of what you're weighing under the circumstances of the CARES Act in terms of why a district court should proceed in this manner. But paramount to all of that is really the defendant's consent. So, let's take the CARES Act out of this anyways. If this was a different situation- Well, these are separate requirements, right? They are separate requirements in terms of making specific reasons, but I don't- the government does not believe that those reasons are generic. There could be issues of finality that apply to a defendant that may- one specific defendant that may not apply to another defendant. But at the end of the day, what we have here is an individual who voluntarily consented to these proceedings and voluntarily waived his right to appear- to be physically present during his sentencing. Judge LaValle, to your question to counsel about whether or not it's structural, this court has held- has applied plain error in the situation where there was a question about whether or not the defendant had waived his right to physically be present. And that's the case of United States v. Saleem, 690 F. 3rd, 115. And plain error analysis was applied. Now, in that situation, it was a resentencing. So on the question of whether or not this was a proceeding which seriously affected the defendant's rights, the district court had already telegraphed in certain decisions that it was going to make the sentencing determination in any event. But plain error still applies, is basically our contention here. So it is the government's view that the only remand that should occur has to do with the limited remand for the purposes of the district court to explain the hows and the whys that came up with the determination that Mr. Bascar was non-indigent for the purposes of the Justice of Trafficking Victims Act's $5,000 assessment. Unless there are any- Can I ask what we should do with these comparator cases? So it is true that a lot of these comparator cases, the conduct seems like it would be more culpable. It's defendants who engage in repeated contact with repeated acts of sexual misconduct with a minor, abusing minors in their care, providing them illicit substances, or child pornography is involved. I mean, isn't it a problem that Mr. Bascar received a substantially higher sentence? No, it is not. Sentencing is individualized. This court has said repeatedly that when you review a sentence, you're reviewing especially for substance of reasonableness. You're reviewing for abuse of discretion. It's a very highly deferential review in terms of the district court's determination, and it's not the time for this court to necessarily tinker or substitute its judgment for what was before the district court. The district court had all the information with respect to Mr. Bascar. Well, this was before the district court, right? This idea that there were these other sentences out there. True, and it had the opportunity to evaluate all that information. It's presumed to have conducted its sentencing- So how should the district court have considered that other information? Well, it's basically, as part of the defendant's sentencing submission, it's part of its weighing of the 3553A factors in terms of, you know, the factor dealing with- Sentencing disparities. Sentencing disparities. Right. So, but it's presumed that the district court has considered everything done, and unless this sentence is shockingly high or shockingly low or unsupported as a matter of law, which it is not, this court should affirm the sentence as substantively reasonable. Is there a tension between the district court giving Baccar the credit for acceptance of responsibility but then concluding that he's not remorseful? No, there is not necessarily, because someone could still accept responsibility and get the credit under the guidelines in terms of saying, I committed the crime, you know, but in terms of remorse, if the district court feels- can weigh how the individual being sentenced before him appears in terms of remorse. I think it's- I don't think there's necessarily a disconnect between acceptance of responsibility and remorse. And what's the evidence in the record that shows that he's not remorseful? It's the statement that he made? I think it's the fact that- I think the district court also weighed in on the fact that this was not conduct that was an isolated incident. It was- it appeared to be something that, you know, he's facing other charges on. And the statement that he made was somewhat- Because it's the kind of thing that was in Pennsylvania? Was more- The Pennsylvania charge? Pardon? The Pennsylvania charge, you're saying. There was the one other incident. That's correct. There was the Pennsylvania charges, which are still pending. And then I think ultimately the district court viewed Mr. Bascar's statement as being very self-centered, really more about his journey and the fact that he's- So I understand that the appearance by video conference was consensual, but it might make a difference to a defendant, whether they're there in person expressing remorse or not in person, right? Like, the district court is basing its evaluation of his remorse on the statement that he made. Did it hurt him that he was appearing remotely as opposed to appearing in person to express that remorse? I think Mr. Bascar is- that's part of his position is that it did hurt him. I do not- I'm asking for your position. The government's position is the record is the same. Like, the record in terms of what was spoken is the substance of what was spoken. And, you know, from that you can see it's not as if- that this was just a mere matter of expression in terms of visual expression or demeanor. But if you read the substance of what Mr. Bascar was saying, his focus was more on his own personal journey. And now he has the strength to become a writer. And now he will, you know, kind of move on. This experience helped him grow as opposed to a focus on really, you know, what was done to the victims. You're saying that that would be the same whether it was on Zoom or in person? Correct. Okay. Unless there are any further questions, the government rests on its papers. Thank you. Okay, thank you, Ms. Lee. We'll turn it back to Ms. Kunstler on rebuttal. Thank you. Your Honors, Mr. Bascar was in clear distress when he was addressing the court. The court had to stop him, ask him to calm down, slow down at least six times that I counted during the transcript. Having an attorney, an advocate by your side during these proceedings is a steadying hand. As an attorney, I often take a break with my client at this moment. In these proceedings that are done remotely, it is very difficult to interrupt the proceedings and ask for that moment. You can't ask for a moment to put your hand on someone's shoulder or look them in the eye and tell them that you're there with them. Well, there's no question it's better in person for all the reasons you've indicated. But, you know, there was a pandemic going on. And in this situation, the court was not in a position to see Mr. Bascar and make a credibility determination about his level of remorse. Ms. Lee just said the determination was not about his credibility. It was about the substance of what he was saying, that he was talking about what had happened in terms of his own personal journey and becoming a writer and so on, as opposed to focusing on the victims. I ask your honors to read his statement and to make your own judgment about what it is he says. My client also apologizes and talks about how it's difficult for him to do that without seeing the victim. And I think part of that is without seeing anything. Right. It's difficult to apologize while being. He says it's difficult for me to apologize when they're not here. I feel like I'm apologizing to no one because they're not here. But that would also be true even if you were appearing in person. Right. Well, he would be he would be appearing and looking at someone. Right. He would be in he wouldn't be in a cage with a screen in front of him looking out at a computer screen that was like, you know. So you're actually you're saying that if he had appeared in person for the sentencing, the substance of what he was saying would be different because he would be emotionally affected by the presence of other people. I'm saying it's a tremendously isolating experience and he was under clear distress. And under that situation, it's difficult for him to express himself and impossible for a judge to determine his level of remorse. And, you know, I also want to say that the court also made conclusions, made findings about him that weren't supported by the record, including that he was truly a child predator, endangered the community. When, you know, given that he met the victim on an adult dating site where she represented her age at 19 was not in possession. When he picked her up in the car, he couldn't tell that she was 11 years old. Well, you know, she said she was 15 at that at that moment. I understand that. What? That is still a minor. It is still a minor. And it's also it's also your honor's part of the reason the reason for that his guideline that elevated his guidelines. They're high because of the age of the victim in this case, which is a strict liability. The victim was the age that she was. But here we also have two doctors with two uncontradicted doctors who assessed the appellant and provided reports stating he was not a danger and was at low risk of recidivism. You know, we have, you know. So, you know, given all that was before the court, the court's conclusions were not supported by the record. OK. Now, in terms of. You can make one final point, but we're over time. OK, thank thank you so much. You know, the exception to the Cares Act was meant to apply to particular cases, you know, such as where a defendant is likely to receive a sentence of time served and a delay in sentencing has the potential to keep that individual incarcerated beyond the guidelines range for which they're being sentenced here. That sentence was impossible. An impossibility. Mr. Baskar faced a mandatory minimum of 10 years and the guidelines of life in prison. Now, I understand your honors. There are valid concerns associated with the delay in sentencing, but here the delay was not substantial. And Mr. Baskar had absolutely nothing to gain by proceeding remotely from a jail cell to a speedy, efficient resolution of his case. That was not his primary concern. His primary concern was an individualized sentencing in which the sentencing court saw him as a human being and carefully evaluated all of the sentencing factors under 18 U.S.C. Section 3553A. And that was not possible under these circumstances. OK, thank you, Ms. Kunstler. The case is submitted.